IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SU-MIN HSIEH,                        )
                                     )
            Plaintiff,               )
                                     )
     v.                              )    No. 04 C 5956
                                     )
R.R. DONNELLEY & SONS COMPANY,       )
etc., et al.,                        )
                                     )
            Defendants.              )

## MEMORANDUM OPINION AND ORDER

In this employment action, Su-Min Hsieh ("Hsieh") has charged R.R. Donnelley & Sons Company and Moore Wallace North America, Inc. (collectively "Donnelley," treated for convenience as a singular noun) with discrimination ascribable to her race and sex in violation of Title VII of the Civil Rights Act of 1964 ("Title VII," 42 U.S.C. §2000e-2000e(17)) and to her age in contravention of the Age Discrimination in Employment Act ("ADEA," 29 U.S.C. §§621-634).[1] Donnelley has moved for summary judgment on each of those claims under Fed. R. Civ. P. ("Rule") 56. For the reasons stated in this memorandum opinion and order, its motion is denied in its entirety.

### Summary Judgment Standards

Every Rule 56 movant bears the burden of establishing the

---

[1] For convenience, provisions of each statute will be cited simply as "Section--," omitting the prefatory references to Titles 42 and 29. That dual usage should not create any confusion, because the section numbers within the two statutes are so different.

absence of any genuine issue of material fact (Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)). For that purpose courts consider the evidentiary record in the light most favorable to nonmovants and draw all reasonable inferences in their favor (Lesch v. Crown Cork & Seal Co., 282 F.3d 467, 471 (7th Cir. 2002)). But to avoid summary judgment a nonmovant "must produce more than a scintilla of evidence to support his position" that a genuine issue of material fact exists (Pugh v. City of Attica, 259 F.3d 619, 625 (7th Cir. 2001)). Ultimately summary judgment is appropriate only if a reasonable jury could not return a verdict for the nonmovant (Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). What follows, then, is a summary of the facts viewed in the light most favorable to Hsieh.[2]

## Background

Hsieh, a Chinese female born in 1944, began working with a predecessor firm of Donnelley as a computer systems analyst in the "Technical Architecture Department" in 1997 (she had also served a one-year stint with that firm in 1980-81)(D. St. ¶¶1-4). Within three years she received two promotions, landing the title

---

[2] This District Court's LR 56.1 implements Rule 56 by requiring the submission of evidentiary statements and responses to such statements to highlight which facts are in dispute and which are not. This opinion will cite Donnelley's LR 56.1 statement as "D. St. ¶--" and its memorandum of law as "D. Mem." Hsieh's LR 56.1 response will be cited as "H. St. ¶--." Where Hsieh has not contested a D. St. assertion, of course, only that statement needs to be cited.

of "Project Manager" with such responsibilities as designing and testing computer applications and system architecture, tailoring those technologies for the company's use and communicating with other teams at the company (D. St. and H. St. ¶5). In 2003, after a merger of two of Donnelley's predecessor firms, Hsieh's department was restyled as the "Information Architecture Department" headed by Michelle Smart ("Smart"), the Vice President of Information Architecture (D. St. ¶8). In the reorganization Hsieh became the manager of one of that department's five sub-teams (D. St. and H. St. ¶12).

Come February 2004 there was another merger, but this time Hsieh did not fare so well (D. St. ¶21). Due to job functions that became redundant after the merger, Smart was directed from above to reorganize her department and reduce the number of overlapping employees (D. St. ¶¶21-22). In March 2004 Smart fired nine employees, including Hsieh and two members of her team (D. St. and H. St. ¶¶26-27).

Hsieh then initiated an Equal Employment Opportunity Commission ("EEOC") complaint, in response to which Donnelley explained Hsieh's termination as non-discriminatory and as necessary "to eliminate duplicative positions after a merger." It further stated that "[b]ecause [Hsieh's] skills were limited solely to supporting only Moore Wallace systems and she was not qualified to support Donnelley's systems, her position was

3

eliminated" (H. St. Ex. 4 at 3). For her part, Hsieh contends that her job was not in fact eliminated--it was simply taken over by another Donnelley employee, David Hilbert ("Hilbert"), a Caucasian male more than 10 years younger than Hsieh. After the merger Hilbert did indeed become responsible for many, if not most, of Hsieh's former projects and for supervising a number of her former staff people (H. St. ¶¶32-33).

Essentially Hsieh claims that in the restructuring Smart chose to transfer Hsieh's responsibilities and staff to Hilbert and to terminate her because of one or more prohibited factors: race, sex and age. In support of its Rule 56 motion, Donnelley argues (as it did before the EEOC) that Hilbert was not merely a replacement for Hsieh but was rather a more experienced employee who was better able to take on a position in the new organization with broader responsibilities than Hsieh's former job--a job that was legitimately eliminated (D. St. ¶¶29-32).

Donnelley now further asserts, in contrast to its pure reduction-in-force position before the EEOC, that Smart's decision was also legitimately motivated by Smart's pre-merger concerns about Hsieh's job performance (D. St. ¶¶20, 24). In response Hsieh argues that those johnny-come-lately performance concerns are mere after-the-fact rationalizations meant to cloak Smart's discriminatory intent, and that as such they create a question as to the honesty of Donnelley's proffered explanations

4

for Hsieh's termination.

### Resolution of Hsieh's Claims and Donnelley's Responses

Two similar employment discrimination statutes govern Hsieh's claims. Section 2000e-2(a)(1) prohibits an employer from discriminating against an employee with respect to her terms and conditions of employment because of her race or sex (as is alleged here), while Section 623(a)(1) prohibits similar discrimination on account of her age (Raymond v. Ameritech Corp., 442 F.3d 600, 610 (7th Cir. 2006)). Under each statute an employee has two roads to a successful claim: the less-traveled direct method and the more circuitous yet well-worn burden-of-production-shifting quadrille first set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)(id.). Venturing no attempt down the less-traveled road, Hsieh seeks to reach her desired destination solely via the latter path.

On that journey Hsieh must establish four initial elements to make her prima facie case (Raymond, 442 F.3d at 610):

> (1) she is a member of a protected class; (2) she was performing at a level that met her employer's legitimate expectations; (3) she was subject to an adverse employment action; and (4) she was treated differently than a similarly situated person outside her protected classes.

If Hsieh makes that showing successfully, the burden of production shifts to Donnelley to "articulate some legitimate, nondiscriminatory reason" for her termination (id., quoting McDonnell Douglas, 411 U.S. at 802). At that point the burden of

5

production shifts back to Hsieh to present evidence that Donnelley's proffered reasons are pretextual (id.). Throughout, the ultimate burden of persuasion does, of course, lie with Hsieh (id.).

As to the first component of her prima facie case, no one disputes that Hsieh falls within protected classes for each of her race, sex, and age discrimination claims (D. St. ¶1). Next, Donnelley makes no argument in its motion that Hsieh was not meeting its legitimate job expectations, so that element is not at issue either. Third, there is no doubt that Hsieh's termination in March 2004 was a materially adverse employment action (Herrnreiter v. Chicago Hous. Auth., 315 F.3d 742, 744 (7th Cir. 2002)). Thus, as to Hsieh's prima facie case Donnelley urges only that she has not provided evidence suggesting that "similarly-situated employees who were not members of the protected class were treated more favorably" (Paluck v. Gooding Rubber Co., 221 F.3d 1003, 1012 (7th Cir. 2000)).

On that score Hsieh points to Hilbert as her chosen comparator. As a Caucasian male much more than 10 years Hsieh's junior, Hilbert is certainly outside of Hsieh's statutorily protected classes (D. St. Ex. A at 148-49; D. St. Ex. D at 5; see also Radue v. Kimberly-Clark Corp., 219 F.3d 612, 619 (7th Cir. 2000)). Donnelley contends, however, that Hsieh and Hilbert were not similarly situated because the view of their mutual

6

supervisor Smart was that Hsieh was less qualified, less experienced and had more performance problems than Hilbert (D. Mem. 9). While that argument may in the end persuade a factfinder, it is not sufficient to succeed at the summary judgment stage.

Whether Hsieh's termination is labeled a "mini-RIF" case or not, she has pointed to evidence that her job responsibilities were not eliminated but rather were taken over by Hilbert, and that is all she really needs to do to create a genuine issue of fact as to that element (Paluck, 221 F.3d at 1011 n.5, 1012; see also Krchnavy v. Limagrain Genetics Corp., 294 F.3d 871, 876 (7th Cir. 2002)). Hilbert himself testified that he became responsible for overseeing many of the projects that Hsieh previously supervised; many of Hsieh's former staff were transferred to Hilbert's new team to do the same work they were doing before; and Hilbert stood in a similar place within the chain-of-command under Smart (D. St. Ex. D at 44, 47-50; D. St. Ex. A at 147-48).

Given that set of facts, the assertions by Donnelley that Hsieh's and Hilbert's job titles may have been slightly different ("Project Manager Technical Architecture" vs. "Manager of Architecture Services" (D. St. ¶¶12, 31), that they had different responsibilities pre-merger and that Hilbert's post-merger job was not entirely congruous with Hsieh's pre-merger job are not

7

dispositive of the issue (see Paluck, 221 F.3d at 1012). That evidence may ultimately persuade a factfinder that Hilbert "did not actually replace" Hsieh, but this Court cannot say that a reasonable factfinder could not go the other way (see id.)

In sum, Hsieh has at a minimum created a genuine issue of material (that is, outcome-determinative) fact as to each of the elements of her prima facie case. In response Donnelley has met its own burden of "produc[ing] admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus" (Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 257 (1981); Rudin v. Lincoln Land Cmty. Coll., 420 F.3d 712, 725 (7th Cir. 2005)). Donnelley asserts that due to its merger with Moore Wallace, Smart was directed to eliminate redundant employees from the predecessor entities under her supervision (D. St. ¶22). Hsieh was assertedly one of those redundant employees, and Smart decided to let her go because of Smart's opinion that Hsieh had less experience and more performance issues than the retained employees--most particularly Hilbert (D. St. ¶¶24-25). That belief, if honestly held, is certainly a legitimate, non-discriminatory rationale for Hsieh's termination.

So the burden shifts back to Hsieh to present evidence that Donnelley's proffered explanation is a mere pretext for discrimination. To do that and avoid summary judgment, she must

8

"point[ ] to specific facts that place [Donnelley's] explanation in doubt" (Culver v. Gorman & Co., 416 F.3d 540, 547 (7th Cir. 2005)). Hsieh has presented evidence suggesting that "the specific reasons given for including her in the reduction [in force] were pretextual" even on the premise that "the reduction was otherwise bona fide," and she has thus met the final burden imposed by the McDonnell Douglas formulation (Paluck, 221 F.3d at 1012-13).

Because Donnelley has at different times offered shifting and potentially inconsistent explanations for Hsieh's termination, that very conduct creates a fact question as to whether any of those rationales was the honest reason for her firing (see Rudin, 420 F.3d at 726).[3] When asked by the EEOC to provide the reason or reasons for Hsieh's termination, Donnelley stated that Hsieh was laid off "to eliminate duplicative positions after a merger" and that "[b]ecause [Hsieh's] skills were limited solely to supporting only Moore Wallace systems and she was not qualified to support Donnelley's systems, her position was eliminated" (H. St. Ex. 4 at 3). Donnelley made no mention to the EEOC of any concerns about Hsieh's pre-merger

---

[3] That principle in the employment discrimination context seems not too dissimilar to the common law "mend the hold" doctrine--a phrase this court has employed in other areas of the law--that limits a party's right in a contract action to shift its litigation position lest its first chosen position may fail to pin its opponent to the mat (see, e.g., Harbor Ins. Co. v. Cont'l Bank Corp., 922 F.2d 357, 362 (7th Cir. 1990)).

9

performance, claiming only that she was no longer needed at the newly merged entity.

As described earlier, though, Donnelley states in its present motion that Smart's decision to terminate Hsieh was motivated by factors that included Smart's concerns about Hsieh's performance, among which were complaints that Hsieh missed work deadlines, that she had a problem with over-committing, that she "rigidly preferred building software applications rather than buying them" and that some of Hsieh's staff people complained about her management style (D. St. ¶¶20, 24). No such concerns were conveyed to the EEOC. Such cases as Starks v. George Court Co., 937 F.2d 311, 314-15 (7th Cir. 1991) have held that when an employer provides differing reasons for a termination in an EEOC questionnaire than it later tenders in a Rule 56 motion in the course of litigation, a reasonable trier of fact can conclude that the proffered reasons are merely pretextual.

By contrast, other cases such as Johnson v. Nordstrom, Inc., 260 F.3d 727, 733-34 (7th Cir. 2001) and Perfetti v. First Nat'l Bank of Chicago, 950 F.2d 449, 456 (7th Cir. 1991) have made clear that a later elaboration that is not actually inconsistent with the employer's originally-given explanation does not create an issue of pretext. So to the extent that Donnelley's invocation of performance issues can be viewed simply as a further explanation of why Hsieh's position and not some other

position was eliminated during the merger, this case may be a closer call.

Just where to draw the line in that regard is not entirely clear. For example, Culver, 416 F.3d at 548, in addressing a situation where the employer had previously asserted "performance issues" but brought up an instance of "insubordination" only at the summary judgment stage, found a legitimate inference of pretext rather than viewing the later mention of insubordination as an elaboration consistent with the earlier and more generalized reference to "performance issues."

But that very kind of uncertainty, which at a minimum would permit a reasonable trier of fact to reach different conclusions as to the credibility of Donnelley's proffered rationales, is exactly what precludes summary judgment here. As Culver, 416 F.3d at 547 has instructed regarding the evaluation of pretext at this stage of litigation, "[s]ummary judgment is appropriate only if a reasonable fact finder would be compelled to believe [the employer's] explanation." That is certainly not the case here. It would surely be reasonable for a jury to conclude that if the now-cited performance issues had honestly been part of Donnelley's motivation to terminate Hsieh, it would have so told the EEOC. It seems natural then to ask why Donnelley is invoking that questionable explanation now. Is it because the reduction in force explanation was not a full, truthful explanation either?

11

Such questions should be left to the trier of fact.

Further buttressing Hsieh's pretext argument is evidence she has adduced that creates a question whether those cited performance issues had any "basis in fact" or could possibly have been "real" reasons for firing her (see Lenoir v. Roll Coater, Inc., 13 F.3d 1130, 1133 (7th Cir. 1994)). That contested evidence is largely encapsulated in D. St. and H. St. ¶20. While not all of Hsieh's proffered evidence actually undercuts the asserted facts behind Smart's asserted concerns, some certainly does. For example, Smart claims that one concern about Hsieh's performance leading to her termination was that some of Hsieh's staff complained about her management style (D. St. ¶20). Yet Smart acknowledged under oath that she never informed Hsieh of those complaints because Hsieh was already terminated by the time the complaints were made to Smart (D. St. Ex. B at 254)! That admission on Smart's part plainly gives the lie to any reliance on those complaints as an honest motivation for Smart's having terminated Hsieh.

In sum, the factual challenges to some of the alleged performance issues--when those challenges are combined with Donnelley's late-in-the-day invocation of those concerns--calls into substantial question the honesty of each of Donnelley's explanations for the termination (contrast Wolf v. Buss (Am.) Inc., 77 F.3d 914, 920, 923 (7th Cir. 1996)). Of course the

12

ultimate factfinder will be entirely free to believe Donnelley, to find that those explanations are not pretextual and to conclude that there was no discrimination against Hsieh (see Rudin, 420 F.3d at 726). But once again this Court cannot say that a reasonable factfinder could not go the other way and conclude that prohibited considerations--one or more of Hsieh's race, sex and age--was or were the true motivation behind her termination. That torpedos Donnelley's summary judgment effort.

## Conclusion

Because Hsieh has presented admissible evidence to create an issue of fact as to each of the elements of the McDonnell Douglas prima facie case and as to the honesty of Donnelley's proffered reasons for her termination, Hsieh has overcome Donnelley's Rule 56 motion for summary judgment. That motion is therefore denied. This action is set for a status hearing at 8:45 a.m. December 11, 2006 to discuss further proceedings looking to trial.

One final note should be sounded. Donnelley is represented by a law firm highly experienced in the field of labor law as well as litigation generally. That firm may be firmly convinced of the rightness of its client's case, and that may indeed prove to be so when the case goes to trial. If Donnelley's counsel are found to be wrong, of course, Hsieh's counsel should become entitled to an attorneys' fee award that will also compensate

them for their successful effort in resisting the current motion. But the presence of genuine and material factual issues, as set out in this opinion, should have been recognized by Donnelley's experienced counsel, so as to have made this trip unnecessary. If then Donnelley does prevail at trial, it will still be in order to consider imposing on it the incremental cost (attorneys' fees and reasonable expenses) caused by compelling Hsieh and her counsel to jump through the litigation hoop twice.

_____
Milton I. Shadur
Senior United States District Judge

Date: November 30, 2006